IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Case No. 3:06-cr-68-MEF |
| ) | |
| LETICIA NAVARRO-FALCON, ) | |

**DEFENDANT'S MOTION TO SUPPRESS EVIDENCE AND STATEMENTS; REQUEST FOR EVIDENTIARY HEARING**

COMES NOW the defendant, Leticia Navarro-Falcon (hereinafter referred to as Navarro) by and through her counsel, Richard Keith, and moves this Honorable Court to suppress all evidence the United States gathered against her, through the illegal search conducted on June 10, 2005, in Alexander City, Alabama. This motion is based on the grounds that the officers entered and searched the home at 317 Oak Hill Drive, Alexander City, Alabama, without consent, and prior to obtaining a search warrant.

Navarro moves the Court to suppress all evidence and any statements obtained during the warrantless search, seizure, and arrest on the following grounds: (1) the warrantless search of Navarro's home occurred without a search warrant and without her consent and was presumptively unlawful, in violation of the Fourth Amendment; and (2) The warrant obtained pursuant to the illegal entry and search is invalid based upon the unlawful gathering of the evidence presented in the affidavit which procured the search warrant.

**STATEMENT OF THE FACTS**

On July 10, 2005, Detective Steve Morgan of the Alexander City Police Department, along with several other officers, approached the trailer home residence of Ms. Navarro, a Mexican immigrant, who was alone. Ms. Navarro answered the door and Detective Morgan, and the other officers, entered the trailer without permission and began to look around the trailer. The detective, accompanied by several other non-uniformed officers, purport to have tried to explain to Ms. Navarro why they were there. Every single officer in the trailer spoke only English, while Ms. Navarro only speaks Spanish; she communicates and only understands minor words and phrases in English.

Ms. Navarro did not understand why the police came to her home, much less why they were inside looking around the residence. The Detective repeatedly spoke to her in a serious voice, with words and purpose unknown to her. Frightened by the situation, she called her roommate, Cipriano Rojas, who later arrived at their trailer, with a friend from his work, to find the police and Detective Morgan inside his home. Mr. Rojas's friend, Jeremy Yates tried to translate the police officers' words to the residents of the home. After Mr. Rojas said he owned the trailer, the Detective and other officers began to conspicuously search each room. They entered, began to search, and did search in detail, the entire trailer, without a warrant, without consent, and in violation of the 4th Amendment of the Constitution. Upon finding a computer, a scanner, and lamination equipment, among other things, some three hours after the officers entered the home and found the electronic equipment, Detective Morgan then left

to secure a search warrant. It was at this belated time that the police called for assistance from an interpreter, as well.

After the arrival of the interpreter, both Ms. Navarro and Mr. Rojas, were explained their rights, and willfully cooperated with the officers. They were arrested and charged with § 13A-9-6 of the Alabama Code, criminal possession of forged instrument. After the police detained Ms. Navarro for three days, she was finally read her Miranda rights in Spanish, and given an opportunity to make a formal statement, to which she claimed to never have participated in the creation or selling of illegal documents and that she was afraid of Rojas, with whom she lived in the trailer, at 317 Oak Hill Drive.

## **ARGUMENT**

**1. THE WARRANTLESS ENTRY AND SEARCH OF THE RESIDENCE AT 317 OAK HILL DRIVE WAS PRESUMPTIVELY UNLAWFUL, AND CANNOT MEET ANY EXCEPTION TO THE WARRANT REQUIREMENT.**

The fact that the officers secured a search warrant some three hours after entering the residence of Navarro and after their illegal search began does not relieve the breach of the 4th amendment violation, which occurred before the warrant was obtained. The Alexander City Police Department violated the 4th Amendment by entering the home of Navarro without a warrant or probable cause, and no exigent circumstance existed to reprieve this presumptively unlawful search.

A warrantless entry into a suspect's home to search the premises is presumed to be unreasonable.[1] However, a warrantless search is allowed where both probable cause and an exigent circumstance exists.[2] Absent exigent circumstances, a warrantless entry to search for weapons or contraband is unconstitutional even when a felony has been committed and there is probable cause to believe that incriminating evidence will be found within."[3]

The government may also execute a warrantless search where the court finds voluntary consent.[4] Voluntary consent questions are "[o]ne of fact to be determined from the totality of the circumstances, and the trial court's voluntariness determination must not be reversed on appeal unless clearly erroneous."[5] Looking to the totality of the circumstances, the 11th Circuit holds that "mere acquiescence to a claim of lawful authority" will not support a finding of consent.[6] "The government may not show consent to enter from the defendant's failure to object to the entry. To do so would be to justify entry by consent and consent by entry. This will not do."[7] The 11th Circuit distinguished failure to object to the entry of police officers from using body language, so to "yield to the right-of-way" to invite the officers at the door to come inside your

---

[1] *United States v. Tobin*, 923 F.2d 1506, 1510 (11th Cir. 1991) (citing *Payton v. New York*, 445 U.S. 573, 586 (1980).
[2] *Id*. at 1510.
[3] *Payton* at 588.
[4] *United States v. Robinson*, 625 F.2d 1211, 1218 (5th Cir. 1980).
[5] *Id*.
[6] *U.S. v. Shaibu*, 920 F.2d at 1427 (9th Cir. 1990) (which the 11th circuit adopted in *Gonzalez, Supra* at note 7).
[7] *U.S. v. Gonzalez*, 71 F.3d 819 C.A. 11 (Fla.) 1996 (agreeing with the 9th Circuit decision in *U.S. v. Shaibu*, 920 F.2d at 1427).

4

home.[8] However, yielding to the right-of-way of the officers, in *Ramirez-Chilel* was prompted upon the officers announcing their presence in Ramirez's native language, Spanish, which contributed to the totality of the circumstances of the case, in which each surrounding circumstance is weighted.[9] The weight of that burden rests with the government in consent to search allegations, which must be proved by clear and convincing evidence.[10]

In the present case, no exigent circumstances existed to enter or search Navarro's home, as evidenced by the failure to mention any remarkable circumstances in the Navarro Investigation Report for the Department of Homeland Security (hereinafter "Report"). Because exigent circumstances must be coupled with probable cause to enter or search a home, further analysis of probable cause is irrelevant. However, because the officers entered the home without a warrant, the only lawful reason allowable for the entry remaining is consent, which the Report fails to mention. Not only does the report fail to mention consent to enter, but also the actual entry into the home, itself.

Because of the holding of the Supreme Court in *Tobin*, any entry into private premises to search those premises is presumptively unreasonable under the 4th Amendment. The purpose to enter the trailer in which Navarro resided, as stated in the Report, was to search for male suspects of Hispanic national origin. Navarro was alone in her home, and refused the officer's request to search the premises. Navarro, with a most limited knowledge of English, told the non-

---

[8] *U.S. v. Ramirez-Chilel*, 289 F.3d 744 (11th Fla. 2002) (distinguishing walking away from the door or standing at the door from physically moving out of the way with the door open to non-verbally invite in the person at the door, through the threshold).
[9] *Id.* at 752 (quoting *Robinson*).
[10] *Phelper v. Decker*, 401 F.2d 232 C.A.5 Tex., 1968

Spanish speaking officers, "No" to their request and called her boyfriend. Still, without understanding anything else besides Navarro's denial to the search request, the officers remained in the residence, with no consent to be inside the home.

Navarro never claimed to let the officers in her home. Nor did she "yield to their right-of-way" to allow them inside her home. Navarro, unlike *Chilel*, did not understand what the officers were saying to her. The officers freely admit in the Report, that she told them she did not understand English. Without understanding English, and with no translator there, the officers contend that she told them she wanted her husband there before the officers conducted a "search." Because the 11th Circuit holds that consent questions of voluntariness are to be decided by the facts that comprise the totality of the circumstances, it is unreasonable to infer that Detective Morgan and the other officers present had a knowing and intelligent voluntary consent to enter the home of a woman who does not understand and speaks only broken phrases of English. Although Navarro does not claim the officers forced their way into the home, she does adamantly refute any notion that any consent to enter the home was ever given, much less a voluntary consent. Because the entry into the home was never consented to, the following search is a product of that primary illegality, and all fruits of that poisonous tree, having come from the exploits of that taint, must be suppressed.[11]

---

[11] *U.S. v. Vicknair*, 610 F.2d 372 C.A., Fla. 1980, quoting, "In determining whether evidence is tainted by an illegal search, proper inquiry is whether, granting establishment of the primary illegality, the evidence has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint."

The officers claim in the report that both residents, Navarro and Rojas, freely consented to their request to search their home, through a non-government translator, whom was not a resident of the home, and has never been verified as a reliable translator by any source. The Report states that Detective Morgan used an unknown person to him, to verify consent from two persons whom did not speak English. What is truly remarkable about this is the time elapsed between the unlawful entry to the home, and the use of the translator. The officers waited in the residence for Rojas to arrive, without calling a translator. They were unaware that anyone arriving would speak anything other than Spanish, and broken English, and relied on the first person unknown to them to attempt to translate a knowing, intelligent waiver of 4th amendment rights. However, after the officers claim to have received consent to search the residence, did the officers call for a readily available interpreter to translate. The officers secured the home, searched the home, then went to get a search warrant, and called for an official translator, after both the illegal entry and search occurred. The interpreter, Jose Garcia, began assisting the officers by reading and explaining the search warrant, already secured, after a search had taken place.

The totality of the circumstances test, comprised of a case-by-case fact-based analysis shows here that there was no voluntary consent given either for entry or a search. The factors in the present case show that there were multiple officers present at the residence, while only one female, whom did not speak English was in the trailer. The officers asked for consent from Navarro to search for suspects, for which she knew nothing of the matter, nor did she understand

7

what they were asking.  Navarro has no educational background, whatsoever, and no prior criminal record, showing no prior dealings with police officers.  Navarro attempted to communicate with the officers, but did not understand what they were saying.  The officers, used an unknown man to "translate" their waiver, which is purported to be voluntary and knowing, of their Constitutional rights, never attempting to retrieve a professional translator, which was readily available for their use, until after they obtained a warrant, and the affidavit supporting the warrant, was already tainted, thus exploiting the fruits of the poisonous tree, from which all evidence against Navarro derives.

## **CONCLUSION**

Because the government bears the burden of proving a consent to search issue, they must prove with clear and convincing evidence that the consent was voluntarily given, and a waiver of their Constitutional rights was intelligent and knowing.  The government must prove this burden, in spite of entering the premises of a woman, of another national origin, whom did not speak or understand English, and supposedly allowing the government officials inside.  The government abused the language barrier, and proved it by calling in a translator to communicate with Navarro, only after a search was conducted, and a warrant was secured. Navarro's rights were admittedly made known to her, only after the warrant was obtained.  Yet the government obtained the warrant, through sworn testimony, describing in detail the items later seized in a back bedroom, claiming consent to "look around," the house, only to retrieve a "search" warrant at a later time; some three hours after the illegal entry occurred.

8

Because the illegal entry and consentless search produced a search warrant based upon tainted sworn testimony, the government willingly, knowingly, and voluntarily abused its discretion, and violated the Constitutional rights of Navarro, and therefore all evidence, statements, and charges brought forth from the initial illegal action are due to be suppressed.

Respectfully submitted this 30th day of May, 2006.

s/ Richard K. Keith
**RICHARD K. KEITH (KEI003)**
Attorney for Defendant
**KEITH & HAMM, PC**
22 Scott Street
Montgomery, AL  36104-4012
Telephone: (334) 264-6776
Facsimile:  (334) 265-5362

## CERTIFICATE OF SERVICE

I hereby certify that on May 30, 2006, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

Susan Redmond, AUSA
Post Office Box 197
Montgomery, AL 36101-0197

s/ Richard K. Keith
**OF COUNSEL**